MANUFACTURERS DISCOUNT COMPANY *v.* AMERICAN SECURITY COMPANY ET AL.

[No. 13,041.  Filed May 16, 1928.]

*Louis Rosenberg* and *Salem D. Clark,* for appellant.
*Wiles, Springer & Roots,* for appellee.

McMAHAN, J.—Action by Manufacturers Discount Company against the American Security Company, Christian Eby, Charles Utsler and one Mallory. By the first paragraph of the complaint, the plaintiff sought to recover possession of a certain automobile. The second paragraph was to recover damages because of an alleged conversion of the automobile. A trial by the court resulted in a judgment for the defendants. The plaintiff appeals and assigns as error the overruling of its motion for a new trial. The specific contentions are that the decision of the court is not sustained by sufficient evidence and that it is contrary to law.

The evidence is sufficient to show that on January 16, 1925, appellant was the owner and in possession of a new Flint automobile which it had a short time prior thereto procured from the manufacturer; that on said day, H. E. Davis, doing business under the name of the "Connersville Motor Sales Company," was in the automobile sales business at Connersville; that on said day, appellant and Davis entered into an agreement by which

said automobile was turned over to the Connersville Motor Sales Company; that at that time, and in appellant's office, a conditional sales contract was made out by the secretary of appellant company, whereby the Connersville Motor Sales Company purported to sell the automobile to Davis; that, as a part of the same transaction, the Connersville Motor Sales Company assigned the said conditional sales contract to appellant; the automobile was thereupon delivered to the Connersville Motor Sales Company and taken to Connersville, and placed in the show and sales room of that company for sale along with other cars. Appellant knew the car was on the floor of the sales room of Davis, or the Connersville Motor Sales Company, and knew that Davis was engaged in the business of selling automobiles. This contract of sale was neither acknowledged nor recorded. Soon thereafter, and while the car was in the sales room of Davis, he borrowed $1,100 from the American Security Company, and, as security therefor, gave a chattel mortgage upon this Flint automobile and another automobile. This mortgage was acknowledged and within ten days after its execution was recorded in the recorder's office of the proper county. At the time of borrowing the money from the security company, and in order to secure the same, Davis made an affidavit that he was the owner of the automobile in question, and that the same was free of all encumbrances and liens of every kind. A few weeks later, Davis, without having sold the car, disappeared and has not since been heard from.

After the disappearance of Davis, and some time in February, 1925, appellant sent an agent to Connersville and took the car from the sales room of Davis and in the nighttime drove it to Indianapolis, and entered into a conditional sale contract whereby it sold the car to Fred Zipp, he being the person who drove the car from Con-

nersville to Indianapolis for appellant. Zipp and Dave Weber operated a garage at Brookville, to which place the car was taken the next day.

On July 1, 1925, an officer of the security company saw the car, parked in the street at Connersville, and took possession of the same under the provisions contained in the chattel mortgage, and placed the same in a garage operated by appellees, Utsler and Mallory. This action followed with the result above indicated. Appellee security company was organized and doing business under and by virtue of the Petty Loan Act, ch. 125, Acts 1917 p. 401, §9777 *et seq.* Burns 1926.

A study of the evidence in the instant case prompts the remark that there was a time when check kiting was quite common, but appellant's method of doing business indicates that check kiting has, with the advent of automobiles, been superseded by something akin to automobile kiting, or at least the kiting of phony conditional sales contracts. This is not the first time this method of doing business has been before this court. See *Guaranty Discount Corporation* v. *Bowers* (1927), 158 N. E. (Ind. App.) 231.

Appellant's first contention is that the "automobile in question, having been sold for a use other than resale, the title thereof could not be disposed of nor encumbered in any manner by Davis so far as to defeat the title owned by appellant under and by virtue of its conditional sale contract and assignment." The weakness of this contention is, that the automobile was not sold for a use other than resale. It was sold by appellant to the Connersville Motor Sales Company, that is, to Davis, for the purpose of a resale by Davis. *Partlow, etc., Car Co.* v. *Stratton* (1919), 71 Ind. App. 122, 124 N. E. 470, and authorities of that character are not of controlling influence in the instant case.

Where a manufacturer or distributor sells an automobile to a dealer for the purpose of resale, knowing such automobile is to be put in stock for resale to the public, it does so with knowledge that, as between it and a good faith purchaser from the dealer, its rights under such a contract are fraudulent and void, and must give way to the rights of the good faith purchaser. If this were not the rule, no one would be safe in purchasing an automobile from the sales room of a dealer.

Paul S. Preston, a salesman employed by appellant, testified that after the car was returned to Indianapolis from Connersville, he, acting for appellant, sold the car to Fred Zipp on a contract conditioned that title should remain in appellant until the purchase price was paid. The contract shows that Zipp was to pay $1,750.20 for the car; that he paid in cash or trade $565, that he was to pay $50 a month for the first three months thereafter and the balance four months thereafter. If this was a good faith sale, as appellant claims it was, appellant was not entitled to recover in the instant case without proof that Zipp had not paid the balance of the purchase price. The evidence is silent upon that question. In the absence of any evidence that Zipp had not paid the balance of the contract price, appellant was not entitled to recover the possession of the car.

Appellant calls attention to the fact that the mortgage from Davis to the security company was given to secure the payment of a note in excess of $300, and for that reason insists that the mortgage is void. But, in view of the conclusion reached, we need not and do not decide that question. Appellant was entitled to recover only on the strength of its own title, and there being no evidence that it has not received from Zipp all of the

purchase price, the contention that the decision is not sustained by the evidence cannot prevail.

Appellant next contends that the decision is contrary to law, because there is no finding that the property should be returned to the defendant. Appellant's complaint was verified and a writ of replevin was by the clerk issued to the sheriff. There is no showing that either the plaintiff or the defendant gave a bond for the possession of the property. Appellant says the failure of the court to find there should be a return of the property to the defendants and to render a judgment for the return makes the "judgment" contrary to law. There is nothing in the record to show who has possession of the property. The complaint allege the defendants had possession of it and there is no showing that they were ever deprived of that possession If the sheriff did not take the property under the writ, or if he did take it and later returned it to appellees, there would be no necessity for a judgment directing that it be returned to them.

In *Baldwin* v. *Burrows* (1884), 95 Ind. 81, there was a general verdict in favor of the defendant. The plaintiff challenged the sufficiency of the verdict by a motion for a *venire de novo*, which was overruled. The Supreme Court, in discussing the sufficiency of the verdict, said: "A verdict for the defendant was equivalent to a verdict that the plaintiffs were not the owners and entitled to the possession of the property. If the property had been taken by the plaintiffs under the writ, this would have entitled the defendant to a verdict for the return of the property and damages for the taking of it; if it had not been so taken, no return could have been awarded or damages assessed for taking. But if the defendant was entitled to a sufficient verdict to warrant a judgment for the return of the property and for damages for taking it, but failed to obtain such a verdict,

how can that harm the plaintiffs? The plaintiffs can not complain of an error committed in their favor, and that can not possibly do them any injury. There was no error against the plaintiffs in overruling the motion for a *venire de novo*." That case is decisive of the sufficiency of the finding in the instant case. See *Cabell* v. *McKinney* (1903) 31 Ind. App. 548, 68 N. E. 601.

Attention is also called to the fact that what purports to be the bill of exceptions containing the evidence is not certified to by the clerk nor identified by him so as to make it a part of the record. See *Mercantile Discount Corp.* v. *Clark* (1922), 78 Ind. App. 313, 135 N. E. 490.

No error is shown in overruling the motion for a new trial.

Judgment affirmed.

Dausman, J., absent.